UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-mj-8571-RMM

IN RE:

SEALED COMPLAINT

_____/

FILED BY \_\_\_\_\_SP\_\_\_\_\_ D.C.

Oct 14, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?   No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?   No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?   No

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: /s/ Suzanne Huyler
SUSANNE HUYLER
Assistant United States Attorney
Court No. A5503350
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
Tel: (561) 209-1013
Suzanne.Huyler@usdoj.gov

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

FILED BY ____SP____ D.C.
Oct 14, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. 25-mj-8571-RMM |
| Alexander Reigosa | ) |
| | ) |
| Defendant(s) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  1/21/25, 1/31/25, 2/27/25, 6/13/25  in the county of  Palm Beach  in the  Southern  District of  Florida , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 841(a)(1) & (b)(1)(C) | Knowingly and Intentionally Distribute a Controlled Substance involving a detectable amount of cocaine |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

*Barry Kopplin*
Complainant's signature

Barry Kopplin, DEA TFO
Printed name and title

Sworn to and attested to me by applicant by telephone (Facetime) per the requirements of Fed. R. Crim. P.4 (d) and 4.1.

Date: 10/14/25

City and state: West Palm Beach, FL

Judge's signature

Ryon M. McCabe, United States Magistrate Judge
Printed name and title

I, Barry Kopplin, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a deputized Task Force Officer with the United States Drug Enforcement Administration (hereinafter referred to as "DEA"). As such, I am a law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), who is empowered to conduct criminal investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I joined the DEA Task Force in April of 2021. I am currently assigned to conduct investigations dealing with all aspects of importation, manufacturing, and distribution of illegal drugs, to include fentanyl, heroin, cocaine hydrochloride, "crack" cocaine and crystal methamphetamine.

2. I am a sworn police officer with the Delray Beach Police Services Department and have served in that capacity since 2011. I am currently assigned as an Agent in the Vice, Intelligence and Narcotics Section, and from there to the Drug Enforcement Administration (DEA) Task Force Group. I have received specialized training about narcotics trafficking and money laundering and have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances.

3. As a Task Force Officer with the DEA, I have conducted investigations and have been instructed in investigative techniques concerning the unlawful distribution of illegal narcotics, possession with intent to distribute controlled substances, importation of illegal narcotics, use of communication facilities to conduct illegal narcotics transactions, maintaining places for purposes of manufacturing, distributing or using controlled substances and conspiracies to commit these offenses, in violation of Title 21, United States Code, Sections 841 843(b), 856, 846, 959(d) and 963, respectively.

4. This affidavit is made in support of a Criminal Complaint and Arrest Warrant charging **Alexander REIGOSA** ( hereinafter referred to as REIGOSA) with distribution of a controlled substance, that is a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers. The limited purpose of this affidavit is to establish probable cause for the offenses described above. Accordingly, this affidavit does not set forth every fact that is known to me, or other law enforcement officers.

## PROBABLE CAUSE

6. In September 2024, law enforcement received information from a past, proven-reliable confidential source (the "CS") identifying Alexander REIGOSA as a cocaine trafficker within Palm Beach County, Florida.

### Undercover Purchases of Cocaine

7. Following the CS's tip, agents initiated a series of undercover purchases of cocaine from REIGOSA in an attempt to identify his source of supply for cocaine.

8. On or about January 21, 2025, an undercover agent (the UC) and the CS conducted a controlled purchase of cocaine from REIGOSA for $800. The powdered cocaine weighed 30.4 grams and tested positive for cocaine content with a presumptive field test.

9. On January 31, 2025, a joint operation by the Drug Enforcement Administration (DEA) and the West Palm Beach Police Department (WPBPD) using the CS and UC to purchase six ounces of cocaine from REIGOSA for $4,200. Prior to the operation, the CS was equipped with covert recording devices, and the UC conducted searches of the CS and the CS's vehicle, both before and after the operation, confirming no illegal contraband.

10. After an operational briefing, the UC directed the CS to contact REIGOSA via phone. REIGOSA answered and directed the CS to FaceTime him; although the CS lacked FaceTime capability at that time, a video call was conducted using the Facebook Messenger app under the name "Alexander Reigosa." REIGOSA arranged to meet at the boat ramps in Lantana, located at 320 East Ocean Avenue.

11. At or around 2:00 p.m., surveillance began at REIGOSA's residence, 514 South Arnold Avenue, Lantana, Florida. At or around 2:11 p.m., an agent observed REIGOSA exit the residence wearing an orange t-shirt. REIGOSA got into the gray Dodge Ram 2500 (Florida license plate RMBU80), where an unidentified white male with long hair approached the driver's side window. While agents were unable to observe the interaction, the two were seen talking for about a minute before REIGOSA drove away from the residence.

12. Shortly thereafter, the UC arrived at the boat ramps in Lantana, with the CS. Within a few minutes REIGOSA arrived, driving the same gray Dodge Ram 2500 pickup truck, bearing Florida license plate RMB-U80. The UC then entered the front passenger seat of REIGOSA's truck, and REIGOSA retrieved the cocaine from below the steering wheel/left dash area and handed it to the UC in a prepackaged clear bag. The UC paid REIGOSA $4,200, exited the vehicle, and left the area.

13. On the same date, the UC weighed and field-tested the seized cocaine, which weighed 167.9 grams and tested positive for cocaine.

14. On February 27, 2025, agents from the DEA and WPBPD conducted a second joint drug operation. The CS and UC prepared to purchase five ounces of cocaine from REIGOSA for $3,500. The UC wore covert recording devices during the operation.

15. At or around 4:14 p.m., after the operational briefing, surveillance began at REIGOSA's residence in Lantana. The UC attempted to contact REIGOSA via telephone, but there was no answer. REIGOSA later sent a text directing the CS to use FaceTime for communication. It should be known the CS could not access FaceTime but conducted a video call with REIGOSA using Facebook Messenger (account name: "Alexander Reigosa"). REIGSOA agreed to meet the CS at the boat ramps in Lantana.

16. At or Around 4:19 p.m., aerial surveillance observed REIGOSA drive from his residence directly to the boat ramps in Lantana with no apparent stops.

17. At or around 4:30 p.m., REIGOSA arrived at the boat ramps, exited the white Mercedes, and walked toward the seawall, proceeding to the boat ramp.

18. At or around 4:38 p.m., the UC arrived and parked at the boat ramps. REIGOSA approached the front passenger side of the UC's vehicle, entered the backseat, and asked about the quantity of cocaine. The UC requested "five," referring to five ounces of cocaine. The UC then handed REIGOSA $3,500 (OAF), and REIGOSA provided a small red bag containing a clear zip-top bag with five ounces of cocaine.

19. At or around 4:43 p.m., REIGOSA exited the UC's vehicle, and the UC departed the area. REIGOSA walked back to the seawall and remained briefly there. As the UC departed the boat ramps, the CS observed a gray Dodge Ram 2500 (FL plate AMBU80), which was used by REIGOSA on a prior drug distribution operation. The driver could not be identified; the vehicle appeared to conduct counter-surveillance for REIGOSA. Aerial surveillance later confirmed REIGOSA reentered the white Mercedes and returned directly to his residence.

20. On June 13, 2025, a third joint operation was conducted by agents from DEA and WPBPD. The operation involved the UC who used covert recording devices and conducted a controlled purchase of six ounces of cocaine from REIGOSA for $4,000.

21. To avoid counter-surveillance, agents deployed aerial surveillance to monitor REIGOSA's illicit activities, identify co-conspirators, locate stash sites, and determine REIGOSA's source-of-supply (SOS) for cocaine. Live surveillance feeds from an affixed camera at an undisclosed location provided an unobstructed view of REIGOSA's residence.

22. At or around 12:34 p.m., the dark gray Dodge Ram parked at 410 N Dixie Hwy, Lantana, Florida. Shortly thereafter, the UC placed a video call to REIGOSA via WhatsApp, and REIGOSA directed the UC to the area of Lantana Road and North Dixie Highway.

23. At or around 12:41 p.m., the UC left the boat ramps and proceeded to the area of Lantana Road and North Dixie Highway, where REIGOSA was observed in the parking lot of X Generation Custom Rods. The UC then pulled into the same parking lot and parked, after which REIGOSA approached the UC vehicle and directed it to park.

24. Inside the UC's vehicle, REIGOSA produced a clear bag containing six ounces of cocaine and placed it just under the front dash.

25. The UC handed REIGOSA $4,000, and the two discussed the price and quality of the cocaine, with REIGOSA acknowledging the agreed price and noting the good quality of cocaine compared to prior meets. REIGOSA then exited the vehicle and walked back to the dark gray Dodge Ram.

## Conclusion

26.   Based on the facts and information set forth in this affidavit, your affiant respectfully submits that there is probable cause to believe REIGOSA committed the criminal offense of distribution of a controlled substance, that is, a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United states Code, Section 841(a)(1) and (b)(1)(C).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

*Barry Kopplin*
Barry Kopplin
Task Force Officer
Drug Enforcement Administration

Sworn and attested to me by applicant by telephone (Facetime) per the requirements of Fed.R.Crim.P. 4(d) and 4.1. on October __14__, 2025.

_____
RYON M. MCCABE
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:   Alexander Reigosa

**Case No**:   25-mj-8571-RMM

Distribution and Possession with Intent to Distribute a Controlled Substance

Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C)
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years to Life
* **Max. Fine:** $1,000,000

***Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**